# EXHIBIT A

Case: 2:16-cv-01149-MHW-CMV Doc #: 12-1 Filed: 09/19/17 Page: 1 of 8  PAGEID #: 75

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release ("Agreement"), which consists of seven (7) numbered pages, is made and entered into by and between First Coast Security Services, Inc. ("FCSS" or the "Company") on the one hand, and Esperanza Higuera and her respective heirs, executors, administrators, agents, successors and assigns ("Higuera"), on the other hand. The Company and Higuera are sometimes collectively referred to herein as the "Parties" and individually as a "Party."

## RECITALS

**WHEREAS**, on or about December 6, 2016 Higuera commenced a lawsuit captioned *Esperanza Higuera v. First Coast Security Services, Inc.*, Case No. 12:16-CV-1149 (Judge Michael H. Watson) in the U.S. District Court, Southern District of Ohio, Eastern Division, alleging violations of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act (the "Lawsuit"); and

**WHEREAS**, the Company has denied and continues to deny Higuera's claims in the Lawsuit, as well as any and all other illegal, unlawful or wrongful conduct and/or liability of any kind relative to Higuera; and

**WHEREAS**, the Company and Higuera have agreed, in order to avoid the burden, expense and uncertainty of continuing the Lawsuit, to compromise, settle and resolve with finality the Lawsuit, any and all claims that were or could have been included therein.

**NOW, THEREFORE,** in consideration of the foregoing and the other covenants and commitments set forth herein, Higuera and the Company agree and stipulate as follows:

Section 1. *Presentation of Agreement*. Higuera acknowledges and agrees she was presented with this Agreement through her attorneys, Peter Contreras and Matthew J.P. Coffman, she has carefully read and considered this Agreement and knows its contents, and she is signing this Agreement knowingly and voluntarily, with a full understanding of its significance and intending to be legally bound by its terms.

Section 2. *Consideration and Dismissal of Lawsuit*. In consideration for this entire Agreement, including the dismissal with prejudice of the Lawsuit in its entirety and the release and waiver of any and all other claims, causes of action, demands or disputes that Higuera believes she has or may have against the Company and/or its owners, officers, managers, employees, successors, assigns, predecessors, parents, subsidiaries or affiliates, individually or collectively, including but not limited to all claims relating to Higuera's employment with the Company, her pay and benefits during such employment and/or her separation from such employment, the Company will pay Higuera a monetary settlement in the total gross sum of Twenty Thousand Dollars ($20,000.00). The settlement payment shall be apportioned as described in subsections (a), (b), and (c) of this Section of the Agreement and shall be provided to Higuera's attorneys after (i) all necessary signatures to the Agreement have been obtained; and (ii) the necessary Court approval is obtained. The settlement payments described in this Section 2 are expressly conditioned on the Court's approval of this Agreement, and no settlement payment will be made prior to such Court approval. The settlement payments shall be provided

to Higuera's attorneys within ten (10) business days after the necessary Court approval of the settlement is obtained. The Parties agree to submit this Agreement to the Court for approval. The parties agree that the Lawsuit is to be dismissed with prejudice and that the parties will bear their own costs other than as otherwise provided herein.

(a) A check in the gross total amount of $5,800.00, less withholdings for applicable employment, income and other taxes, shall be provided to Higuera as compensation for alleged unpaid W-2 wages, including alleged unpaid regular or overtime wages, claimed under the FLSA and Ohio law in the Lawsuit. Apart from the noted tax withholdings, Higuera shall be solely responsible for any and all tax liabilities, obligations and/or consequences relating to this payment other than any obligations relating to FCSS's portions of any FICA taxes.

(b) A check in the amount of $5,800.00 shall be provided to Higuera as compensation for alleged liquidated and/or compensatory damages claimed in the Lawsuit. An IRS Form 1099-MISC shall be issued to Higuera and the relevant taxing authorities in relation to such payment. As noted in Section 4 of this Agreement, Higuera shall be responsible for all tax liabilities, obligations and/or consequences relating to this payment other than any obligations relating to FCSS's portions of any FICA taxes..

(c) A check in the total amount of $8,400.00 shall be provided to Higuera's attorneys, Peter Contreras and Matthew J.P. Coffman, without deductions for tax withholdings or any other deductions, for attorneys' fees and costs pursuant to 29 U.S.C. § 216(b). An IRS Form 1099-MISC shall be issued to Contreras Law, LLC, and the relevant taxing authorities in relation to such payment and Contreras Law, LLC shall provide a completed and signed W-9 form to FCSS's counsel prior to said payment being made. As noted in Section 4 of this Agreement, Higuera, along with her attorneys, shall be responsible for all tax liabilities, obligations and/or consequences relating to this payment.

Higuera acknowledges and agrees that the payments described in this Section 2 of this Agreement is in full and complete satisfaction of her claim for unpaid regular and/or overtime wages, as well as liquidated damages, under the FLSA and the payment described in Section 2(c) of this Agreement is in full and complete satisfaction of any claimed entitlement to attorneys' fees under the FLSA or otherwise and is a reasonable fee for such purposes. Higuera accepts these amounts as a full, complete and satisfactory recovery on her FLSA claims in the Lawsuit.

Section 3. No Consideration Absent Execution of this Agreement. Higuera understands and agrees that she would not receive any of the consideration specified in Section 2 of this Agreement except for her dismissal with prejudice of the Lawsuit, her execution of this Agreement, and her strict compliance with the promises and commitments contained herein (specifically including the confidentiality and non-disparagement obligations set forth in Sections 6 and 7, and the general release of all claims set forth in Section 8).

Section 4. Taxation and Indemnity. Higuera acknowledges and agrees that she is solely and exclusively responsible for any and all income and other tax liabilities, obligations or consequences which are or may become due and payable in connection with the payments being

provided under Section 2 of this Agreement other than any obligations relating to FCSS's portions of any FICA taxes. Higuera further acknowledges that, except for the mandatory tax withholdings on the amount specified in Section 2(a) of this Agreement, the Company makes no representations or warranties whatsoever concerning the potential tax obligations, liabilities and/or consequences associated with any portion of the settlement payment being provided hereunder. Higuera further acknowledges and agrees that she is solely responsible to satisfy any such tax liabilities, obligations or consequences and shall defend, indemnify and hold harmless the Company and/or the Released Parties as to any such taxation matters, other than any obligations relating to FCSS's portions of any FICA taxes, as may be necessary.

Section 5. <u>Nonadmission of Liability/Wrongdoing</u>. Higuera acknowledges and agrees that the monetary consideration she is receiving from the Company pursuant to this Agreement is being provided solely in exchange for the compromise, settlement and dismissal with prejudice of the disputed claims in the Lawsuit, along with the other promises and covenants set forth in this Agreement. Higuera further acknowledges and agrees that the consideration described in Section 2 of this Agreement shall not under any circumstances be represented or construed as an admission of the validity of Higuera's claims in the Lawsuit or of legal liability or wrongdoing of any kind by the Company or any of its owners, executives, officers, managers, employees, predecessors, successors, assigns, parents, subsidiaries or affiliates. Higuera further acknowledges that the Company has denied and continues to deny any and all wrongful or unlawful conduct and/or liability with respect to Higuera.

Section 6. <u>Non-disparagement</u>. Higuera agrees and covenants that she shall not slander, disparage or make any negative public statements about the Company (including the Released Parties as defined in Section 8 of this Agreement), or knowingly make statements or take any other actions that would damage the Company's business interests, business or personal reputations, or good names.

Section 7. <u>Confidentiality</u>. Higuera agrees to maintain the strict confidentiality of the existence and terms of this Agreement, information regarding the underlying facts and allegations leading up to this Agreement, discussions and/or information exchanged in discovery during the Lawsuit and/or the settlement payments described in Section 2, except that Higuera may disclose necessary financial information to the Court for purposes of its approval of the FLSA settlement, to Higuera's respective tax and legal advisers for purposes of professional advice, to her spouse, to tax authorities, and as may be required pursuant to a lawfully issued subpoena. As to such persons, the Parties agree they shall inform them of the strict confidentiality obligation relative to the background facts, existence and terms of this Agreement and shall advise them that they, too, are expected to maintain such confidentiality. If requested by a third party as to the status or resolution of the Lawsuit, Higuera shall advise only that the case been resolved and provide no other information. If Higuera should receive a valid subpoena to give documents or testimony regarding any matters within the scope of her obligation of confidentiality hereunder, she shall comply with the subpoena, but shall first inform by certified mail and/or fax the Company's Human Resources Director, Adeline Poudrier, by regular mail at 1 Independent Drive, Suite #117, Jacksonville, Florida 32202 or by email at apoudrier@fcssfl.com within five (5) calendar days of its receipt, and give the Company an opportunity to quash the subpoena or otherwise object to the disclosure of information protected by this Agreement prior to Higuera providing any subpoenaed documents or testimony. This

3

provision regarding subpoenas does not require Higuera to violate any rules, statutes, regulations and/or court orders. Company acknowledges and understands that despite Higuera's anticipated attempts to comply with this paragraph regarding any potential subpoenas, that rules, statutes, regulations and/or court orders may compel disclosure of information. Should Higuera violate the confidentiality terms set forth in this Section, she will be liable to the Company for the entire amount of the consideration paid to her in the matter, plus the costs of enforcement and collection of same, including reasonable attorneys' fees, consistent with Section 11 of this Agreement.

Section 8. <u>General Release of All Claims</u>. Higuera knowingly and voluntarily releases, waives and forever discharges the Company, and its respective predecessors, successors, assigns, insurers, parents, subsidiaries, divisions, related or affiliated companies, and their respective current and former owners, shareholders, officers, directors, supervisors, managers, insurers, employees, representatives, attorneys, agents and assigns, both in their individual and representative capacities (collectively, "Released Parties"), of and from any and all claims, known and unknown, asserted or unasserted, which Higuera has or may have against the Company and/or the Released Parties as of the date of execution of this Agreement, including, without limitation, any alleged violation of the The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as well as:

- Any other federal, state or local law, rule, regulation, or ordinance and the common law;
- Any claim for promissory estoppel, violation of public policy, infliction of mental or emotional distress, loss of consortium, invasion of privacy, false light, fraud, fraud in the inducement, negligence, intentional tort, breach of express or implied contract, or defamation; and/or;
- Any basis for recovering liquidated damages, costs, fees, or other expenses including attorneys' fees incurred in these matters.
- If any claim is not subject to full release/waiver based on applicable law or regulation then, to the extent permitted by law, Higuera hereby waives any right, entitlement or ability to be a class or collective action representative, member or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim to which the Company or any other Released Party may be a party.

Section 9. <u>Acknowledgments and Affirmations</u>.

a. Higuera affirms that except for the claims asserted in the Lawsuit, she has not filed, caused to be filed and presently is not a party to any claim against the Company or any of the Released Parties that are being released pursuant to Section 8 of this Agreement. Higuera further affirms and covenants that she will never file a lawsuit or other type of legal claim or cause of action that has been released pursuant to Section 8 of this Agreement.

b. Higuera affirms that she has been paid and/or has received all compensation, wages (including overtime wages), bonuses, commissions and/or benefits related

to her past employment and association with the Company which are due and payable as of the date she signs this Agreement, other than the payments to be made pursuant to this Agreement.

c. Higuera affirms that all of the Company's decisions regarding her pay and benefits through the date of Higuera's execution of this Agreement were not discriminatory based on disability, age, race, color, sex, religion, national origin, ancestry, military status, genetic information, or any other classification protected by law.

d. Higuera affirms that she has been granted any leave to which she was entitled at the Company under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

e. Higuera affirms that she has no known workplace injuries or occupational diseases relating to her former employment with the Company, other than any claim(s) for workers' compensation benefits Higuera filed prior to filing the Lawsuit.

f. Higuera affirms that she has not divulged and will not in the future divulge any proprietary, confidential or sensitive business information or trade secrets of the Company and/or any of the Released Parties and that she has and will continue to maintain the strict confidentiality of such information.

g. Higuera affirms that as of the date she signs this Agreement, she is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end-stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (the "CMS") (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payments to Higuera under this Agreement, Higuera agrees to indemnify, defend and hold the Company and/or any of the Released Parties harmless from any action by the CMS relating to medical expenses of Higuera. Higuera agrees to reasonably cooperate with the Released Parties upon request with respect to any claim the CMS may make and for which Higuera is required to indemnify Released Parties under this Section. Further, Higuera agrees to waive any and all future actions against Released Parties for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A); and

h. The Parties acknowledge that this Agreement does not limit any Party's right, where applicable, to participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, Higuera agrees that if any administrative claim, including a claim by the U.S. Department of Labor, is made based on acts or events occurring at any time up to and including the date Higuera signs this Agreement, Higuera shall not be entitled to recover any individual monetary relief or other individual remedies, it being understood and agreed that the consideration provided under this Agreement is in full

satisfaction of any and all claims, disputes and/or causes of action for monetary remedies, wages or benefits (including liquidated damages) that Higuera may have relative to the Company.

i. Higuera acknowledges and agrees that to the extent a future claim, audit or investigation is instituted in relation to the Company's or any Released Party's payment of wages to their employees and a determination is made that Higuera may be or is entitled to compensation as a result of such claim, audit or investigation, any compensation received pursuant to Section 2 of this Agreement must be set-off against any amount determined to be owed pursuant to the claim, audit or investigation.

Section 10. <u>No Reapplication or Re-employment</u>. Higuera acknowledges and agrees that because of circumstances unique to her, including but not limited to irreconcilable differences with FCSS and its affiliates and subsidiaries, Higuera has no right to reinstatement to employment or future employment with the Company or any of the Released Parties, and Higuera further agrees that she shall not apply in the future for employment with the Company or any of the Released Parties. The Parties agree that this Section 10 is a negotiated, non-retaliatory term of this Agreement.

Section 11. <u>Neutral Employment Reference.</u> The Company agrees that, in response to any inquiries by potential employers of Higuera, the Company will provide a neutral employment reference consisting only of Higuera's job position(s) held with the Company, hiring date, and employment termination date.

Section 12. <u>Consequences of Breach</u>. Higuera and the Company each acknowledge and agree that in the event that either of them should be determined by a court of competent jurisdiction to have breached or violated any provision of this Agreement, including Higuera's obligations of confidentiality and non-disparagement, and/or the release of claims and covenant not to sue, the breaching Party shall be subject to legal action for such breach or violation and may be held liable to the non-breaching Party for contractual and/or other legal or equitable remedies, including attorneys' fees paid to the prevailing party.

Section 13. <u>Governing Law and Interpretation</u>. This Agreement shall be governed and conformed in accordance with the laws of the United States and the State of Ohio without regard to its conflict of laws provisions. Should any provision of this Agreement be declared illegal or unenforceable by a court of competent jurisdiction and such provision cannot be modified to make it enforceable, excluding the general release language set forth in Section 8, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

Section 14. <u>Amendment and Counterparts</u>. This Agreement may not be modified, altered or changed except by means of a writing that is signed by all Parties wherein specific reference is made to this Agreement. This Agreement may be executed in two or more counterparts, each of which shall be taken to be one and the same document, with the same effect as if all Parties hereto had signed the same signature page. A facsimile or electronic copy of any Party's signature shall be deemed as legally binding as the original signatures.

Section 15. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Parties hereto and, except as may be specifically stated otherwise herein, fully supersedes any and all prior agreements or understandings between the Parties, whether written or oral. The Parties acknowledge that they have not relied on any representations, promises or agreements of any kind made to them in connection with their decision to accept this Agreement, except for those set forth in this Agreement.

**HIGUERA AGREES THAT SHE WAS PROVIDED A REASONABLE PERIOD OF TIME TO REVIEW AND CONSIDER THIS AGREEMENT AND GENERAL RELEASE. HIGUERA ALSO IS ADVISED TO CONSULT WITH HER ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT AND HEREBY ACKNOWLEDGES SHE HAS DONE SO.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND COVENANTS CONTAINED HEREIN, AND TO RECEIVE THE SUMS AND BENEFITS DESCRIBED IN SECTION 2 ABOVE, HIGUERA FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST FCSS.**

WHEREFORE, by their signatures below, the Parties hereby indicate their acceptance of the terms of this Agreement:

ESPERANZA HIGUERA

_____     8/25/17
**SIGNATURE**                       Date

FIRST COAST SECURITY SERVICES, INC.

_____     8/25/2017
By:                                 Date

Chief Operating Officer
_____
Its:

4843-4159-1116, v. 1